### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

JEFFREY WAYNE WANSLEY                                                    PLAINTIFF

VS.                                                    CIVIL ACTION NO. 2:07cv83–KS-MTP

RONALD KING, *et al.*                                                    DEFENDANTS

### REPORT AND RECOMMENDATION

THIS MATTER is before the court on the Motion for Summary Judgment [29] filed by

Plaintiff and the Cross-Motion for Summary Judgment [44] filed by Defendants.  Having

considered the submissions of the parties and the applicable law, the undersigned recommends

that the parties' Motions for Summary Judgment [29] [44] be DENIED.

### FACTUAL BACKGROUND

Plaintiff Jeffrey Wayne Wansley is currently incarcerated at the South Mississippi

Correctional Facility ("SMCI") after having been convicted of selling cocaine in Newton County,

Mississippi.  Plaintiff filed his Complaint [1] on or about April 25, 2007, pursuant to 42 U.S.C. §

1983 against Defendants Ronald King and Christopher Epps.  In his Complaint [1], Plaintiff

complains of exposure to unreasonable levels of second-hand smoke at SMCI-II.  He claims that

Defendants are in violation of the Mississippi Clean Indoor Air Act (House Bill 123),[1] MDOC

Policy 25-05-F,[2] and the Eighth Amendment.  Plaintiff alleges that Defendants' failure to enforce

the no-smoking policy inside facility buildings constitutes deliberate indifference to his health,

"subjecting [him] to a serious risk of 'heart disease' and 'cancer.'" Complaint [1] at 4.

---

[1]The Mississippi Clean Indoor Air Act (House Bill 123) generally prohibits smoking inside government buildings.  *See* Miss. Code Ann. § 29-5-161.

[2]MDOC Policy 25-05-F provides that the MDOC shall provide a "smoke-free environment for inmates inside the facility units."  *See* Policy [50-2] at 4.

Plaintiff seeks the following relief: $25,000 in damages and $100/day for each day he is

subjected to the second-hand smoke indoors; to create a no-smoking zone at SMCI; and to

proscribe Defendants and others from retaliating against him.

On or about February 11, 2008, Plaintiff filed his Motion for Summary Judgment [29],

claiming that he has sustained a "physical injury," bronchitis, due to his involuntary exposure to

second-hand smoke.[3]  He claims that he is housed with approximately 100 inmates, and about 94

of them smoke unfiltered cigarettes and/or cigars.  Motion [29-3] at 3.  He alleges that he suffers

from chest pains and has trouble breathing, and that his future health is at risk due to such

exposure and Defendants' failure to enforce the MDOC no-smoking policy and the Mississippi

Clean Indoor Air Act.  In support of his Motion [29], Plaintiff submitted affidavits of other

inmates stating that inmates and MDOC staff smoke indoors, both in and outside of the

"designated smoking area," and that "ETS pervades the whole living area continually."  *See*

Affidavits [29-2].  Plaintiff also submitted his own affidavit [29-2], and attached news articles

regarding the general dangers of second-hand smoke and a petition for a smoke-free building

signed by fifty-eight other inmates.  *See* "Exhibits of the Surgeon General's Report;" "Smoke-

Free Building Request List" [29-4].

In his Motion [29], Plaintiff alleges that he submitted a sick call request on June 25, 2007,

---

[3]In their Memorandum [45], Defendants note that Plaintiff's Motion was filed after the motion deadline and was filed without leave of court.  The motion deadline was January 31, 2008.  *See* Scheduling Order [21].  Because Plaintiff's Motion was filed only six days (February 6, 2008) after the expiration of the motion deadline, the court will give full consideration to Plaintiff's Motion.  *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995) (stating that a prisoner's pleading is filed when it is delivered to the prison official for mailing pursuant to the mailbox rule); *Nelson v. Cauley*, No. 3:04cv828-G, 2005 WL 221349, at *2 (N.D. Tex. Jan. 27, 2005) ("The mailbox rule generally applies to all prisoner district court filings.").  However, fairness dictates that the court must also consider Defendants' Cross-Motion for Summary Judgment [44], which was filed after the motion deadline.

to "find how if any, damage has been done to his lungs due to exposure to second-hand smoke."

Motion [29-3] at 2.  However, he claims that he did not actually see a doctor until July 19, 2007.

He saw Dr. McCleave and was prescribed antibiotics and an inhaler for bronchitis "probably

from second-hand smoke."  *Id.*  Plaintiff further claims he received medication on July 25, 2007,

October 29, 2007, December 22, 2007, and December 31, 2007, for problems allegedly caused

by exposure to second-hand smoke.  *Id*. at 2, 12.  In support of his Motion, Plaintiff submitted

copies of his sick call requests, a summary of his medical complaints, and the medications he has

been prescribed.  *See* "Medical History" [29-3].

In their Response [43] and Cross-Motion for Summary Judgment [44] filed on April 7,

2008, Defendants claim that Plaintiff failed to demonstrate that he is exposed to unreasonably

high levels of second-hand smoke and that Defendants created a risk of harm "so grave that it

violates contemporary standards of decency to expose anyone unwillingly to such a risk."  *See*

Response and Cross-Motion [43][44] at ¶ 4.  In support of their Cross-Motion [44], Defendants

submitted the affidavits of Superintendent Ronald King and Dr. Ron Woodall, SMCI Medical

Director.

On April 18, 2008, Plaintiff filed his Response [50] in opposition to Defendants' Cross-

Motion for Summary Judgment.  In his Response [50], Plaintiff claims that Dr. Woodall's

affidavit contains false statements.  He also notes that Ron King's affidavit only states that the

MDOC complies with MDOC Policy DOC-20-10, and ignores Plaintiff's allegations about the

enforcement of Policy 25-05-F, in an attempt to "deceive the court."  *See* Response [50] at 5.

Plaintiff submitted additional affidavits from other inmates describing the smoking that occurs

indoors at SMCI-II and the grievances they have submitted through the Administrative Remedy

3

Process ("ARP").  *See* Affidavits [50-4].

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the non-movant, the movant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the movant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied.  *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *Id.* at 708, 712.

ANALYSIS

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted).  "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."  *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials such as Defendants may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful

4

conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

In *Helling v. McKinney*, 509 U.S. 25, 35 (1993), the Supreme Court established a two-prong test to determine whether a claim for exposure to environmental tobacco smoke ("ETS") violates the Eighth Amendment. First, Plaintiff must show that he was exposed to unreasonably high levels of ETS. *Helling*, 509 U.S. at 35. Second, he must show that the prison officials acted with deliberate indifference to his situation. *Id.* This test involves both objective and subjective components. *Id.* With respect to the first prong, Plaintiff must objectively "show that he himself is being exposed to unreasonably high levels of ETS." *Id.* Establishing the objective factor "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* at 36. "[S]poradic and fleeting exposure" to ETS does not constitute "unreasonably high levels," even if it is "unwelcome and unpleasant" and causes Plaintiff discomfort, such as nausea and coughing. *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36.

For the second prong, Plaintiff must show that the prison officials were subjectively deliberately indifferent to his situation. *Id; see also Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001); *Callicutt v. Anderson*, 48 Fed. Appx. 916, 2002 WL 31114947, at *1 (5th Cir. Sept. 11, 2002) (stating that in order to succeed on an Eighth Amendment claim, plaintiff must show that he is exposed to unreasonably high levels of ETS and that the prison officials demonstrated deliberate indifference to his situation). In order to demonstrate deliberate indifference, Plaintiff must show that Defendants acted with "obduracy and wantonness, not inadvertence or error in good faith." *Callicutt*, 2002 WL 31114947, at *2 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Courts should consider the following factors in evaluating deliberate indifference to ETS: "the adoption of a smoking policy; the administration of that policy; and 'the realities of prison administration.'" *Id.* (citing *Helling*, 509 U.S. at 36-37).

The Fifth Circuit recently issued two opinions, though unpublished, holding that fact issues precluded summary judgment in favor of defendants on the inmates' claims for exposure to excessive levels of ETS.[4] *See Murrell v. Chandler*, No. 07-40340, 2008 WL 1924198 (5th Cir. Apr. 10, 2008); *Murrell v. Casterline*, No. 07-30153, 2008 WL 822237 (5th Cir. March 25, 2008).[5] In *Chandler*, the Fifth Circuit reversed the district court's grant of summary judgment in

---

[4]The Fifth Circuit also recently issued an unpublished opinion vacating the decision by the U.S. District Court for the Northern District of Mississippi dismissing an inmate's ETS claim pursuant to 28 U.S.C. § 1915(e). *See Marcus v. Epps,* No. 07-50568, 2008 WL 2048331 (5th Cir. May 14, 2008). In *Marcus*, the plaintiff alleged he was exposed to ETS, he was injured as a result of the exposure, and that the defendants knew of and disregarded this risk to his health. *Marcus*, 2008 WL 2048331, at *1. The Fifth Circuit held, "Although inartful, [plaintiff's] complaint does not fail to allege sufficient facts to state a facially plausible claim for relief at this juncture, although the ultimate viability of [his] claim is dubious." *Id.*

[5]These cases involve the same plaintiff, Getzell Johnson Murrell, relating to claims of ETS exposure while he was incarcerated in two different prisons.

favor of the defendants on prisoner's ETS claim. *Chandler*, 2008 WL 1924198, at *1.  The court

found that the prisoner's sworn affidavit included the following competent summary judgment

evidence:

> he was assigned to a non-smoking unit but smokers were housed at the same unit;
> he was exposed to excessive levels of ETS 12 to 24 hours a day in his housing
> unit and at the factory where he worked; the smoke was often so thick in his
> housing unit that he had to hold a wet towel over his face to breathe; he advised
> the defendants that the no smoking policy was not being enforced and that he was
> having serious health problems that included migraine headaches and respiratory
> problems.

 *Id*. at *2.  The court held, "This evidence creates genuine issues of material fact

regarding whether Murrell objectively proved that he was exposed to unreasonably high

levels of ETS and whether the defendants were subjectively deliberately indifferent to his

plight."  *Id*.

Likewise, in *Casterline*, the Fifth Circuit vacated the district court's grant of summary

judgment in favor of the defendants on the prisoner's ETS claim.  *Casterline*, 2008 WL 822237,

at *1.  The magistrate judge in the underlying case took judicial notice of the June 2006 Surgeon

General's report concluding that there is no safe level of exposure to second-hand smoke, and

concluded that the plaintiff met the first prong of *Helling*; defendants did not appeal this holding.

*Id.*  In concluding that the district court erred in holding that the plaintiff failed to meet the

second prong of the *Helling* test, the Fifth Circuit held that the plaintiff established genuine

issues of material fact as to whether the defendants were subjectively deliberately indifferent to

his situation.  *Id.* at *2.  In its holding, the Fifth Circuit relied on evidence presented by the

plaintiff that the defendants knew that he was allergic to ETS, that he specifically asked the

defendants to enforce the no-smoking policy, and that the defendants failed to enforce the policy.

*Id.*  The court also considered sworn statements of other inmates submitted by the plaintiff

indicating that defendants did not enforce the policy.  *Id.*

Based on the record and the recent holdings by the Fifth Circuit, the undersigned

concludes that genuine issues of material fact exist as to whether Plaintiff has objectively

demonstrated "that he himself is being exposed to unreasonably high levels of ETS."  *Helling*,

509 U.S. at 35; *see also Wilson v. Stalder*, 70 F.3d 1268,  1995 WL 696718, at *4 (5th Cir. Oct.

19, 1995) (reversing district court's grant of summary judgment in favor of defendants on

plaintiff's ETS claim based on existence of genuine issues of material fact).  Plaintiff claims that

94 of the 100 inmates in his unit smoke cigarettes or cigars, and that he is unwillingly exposed to

ETS 23 hours a day.

Defendants submitted the affidavit of Ronald King, which states that Plaintiff's zone has

a designated smoking area in the day-room section at the front of the zone.  *See* Affidavit [44-2].

Mr. King states that offenders are not allowed to smoke in the sleeping areas, and that two

exhaust fans are located at the rear of the zone which circulate the air, and that two ceiling vents

are located directly above the day-room area.  However, Plaintiff submitted the affidavits of

several other inmates stating that inmates smoke throughout the entire unit, not just the

designated areas, which causes the ETS to pervade the entire unit, making it impossible to get

away from the ETS.  *See* Affidavits [29-2] at 4-11; [50-4].  Plaintiff also claims that he has

complained about the smoking and the inadequate ventilating system in his unit, and that the

ventilation fans are turned off "85% of the time" in the winter, exposing him to unreasonably

high levels of ETS.  *See* Motion [29] at 9.

Further, Plaintiff's sworn submissions reflect that he has bronchitis, for which he was

prescribed antibiotics and an inhaler.  *See* Affidavit [29-2].  He also claims that he suffers from

chest pains, and has trouble "breathing fresh air."  *See* Motion [29] at 3; [29-3] at 2.  Plaintiff

alleges that these problems were caused by his unwilling exposure to second-hand smoke.

Defendants submitted the affidavit of Dr. Ron Woodall, the Medical Director at SMCI.

Dr. Woodall states that he has reviewed Plaintiff's medical file, and notes complaints from

Plaintiff from July 10, 2007 to December 18, 2007, for sinus congestion, cough, and chest pain,

which Plaintiff claimed were caused by exposure to second-hand smoke.  *See* Affidavit [44-3].

He further states that Plaintiff was treated for bronchitis with antibiotics and a pulmonary inhaler,

but that his chest x-ray was normal.  *Id.*  Plaintiff's radiology report dated July 23, 2007, states

that his lungs were clear, his heart was normal, and that his bony thorax was unremarkable.  *See*

Exhibit [44-3] at 4.  Additionally, Dr. Woodall states that in his opinion, "the level of smoke

does not pose unreasonable risk of serious damage to future health" and that "Wansley's

exposure does not create a risk of harm violating contemporary standards of decency."  *See*

Affidavit [44-3].  In response, Plaintiff claims that Dr. Woodall has never even been inside the

housing area where Plaintiff is housed.  *See* Response [50] at 88.

It is undisputed that Plaintiff was treated for bronchitis with antibiotics and an inhaler.

While the summary judgment evidence submitted by Plaintiff does not establish that these

conditions were caused by the ETS, his sworn complaint and affidavit create a genuine issue of

material fact.  Further, even if Plaintiff's chest x-ray was normal, the Eighth Amendment's

proscription against deliberate indifference applies not only to current health problems, but also

to the risk of future health problems.  *See Helling*, 509 U.S. at 33-35; *see also Herman v.*

*Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Helling*, 509 U.S. at 33-35) (stating that "an

inmate may obtain injunctive relief under § 1983 based on exposure to environmental tobacco smoke in the absence of a present physical injury").

There are also genuine issues of material fact as to whether Defendants were deliberately indifferent to Plaintiff's situation. *See Helling*, 509 U.S. at 35-36. Plaintiff alleges that Defendants knew of the serious risk of harm caused by second-hand smoke, as evidenced by the enactment of MDOC Policy 25-05-F, which prohibits smoking inside MDOC facilities, which was signed by Defendant Christopher Epps. *See* Policy [50-2] at 4. Plaintiff claims that Defendants knew inmates were smoking indoors in violation of this policy, yet did nothing to stop it. He claims that after the enactment of the Mississippi Clean Indoor Air Act, Defendants only banned smoking in the administration buildings and continued to allow inmates to smoke in the housing areas. Plaintiff alleges that Defendants were also aware that the smoking policy was not being enforced through the numerous ARP grievances filed by Plaintiff and other inmates complaining of ETS. Plaintiff's ARP Second Step Response Form was signed by Defendant Ronald King. *See* Form [13-2] at 10.

Ronald King's affidavit states that SMCI abides by MDOC Policy DOC-20-10, which provides that the MDOC shall designate smoking areas for its offenders, if appropriate. *See* Affidavit [44-2]. It further states that any violation of the policy shall be addressed through the MDOC offender disciplinary process. *Id.* Mr. King's affidavit does not address MDOC Policy 25-05-F, which prohibits smoking inside MDOC facilities.

Based on the evidence before the court, there are genuine issues of material fact as to whether Plaintiff was exposed to unreasonably high levels of ETS, and whether Defendants acted with deliberate indifference to his situation in violation of the Eighth Amendment. *See Helling*,

509 U.S. at 35.[6]

To the extent Plaintiff's Motion [29] seeks judgment as a matter of law on his claims that Defendants violated the Mississippi Clean Indoor Air Act (House Bill 123) and MDOC Policy 25-05-F, he has failed to demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.[7]

## RECOMMENDATION

For the reasons stated above, it is the recommendation of the undersigned that Plaintiff's Motion for Summary Judgment [29] be DENIED, and that Defendants' Cross-Motion for Summary Judgment [44] be DENIED.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with

---

[6]Plaintiff should understand that this recommendation does not reflect any opinion of this court that the claims contained in the complaint will or will not ultimately be determined to be meritorious.  Rather, in reaching this conclusion, the undersigned merely concludes that genuine issues of material fact exist as to Plaintiff's claims.  It is noteworthy that the Defendants allege that Plaintiff himself may be a smoker, as evidenced by his regular tobacco purchases, including a purchase of rolling papers and "roll your own menthol-2 oz." on  February 8, 2008.  *See* Exhibit [44-2] at 6-11.  Plaintiff contends that he does not smoke, and has previously indicated that he purchases tobacco products for his friends, and not himself.  *See* Response [50] at 8; Reply [33] at 12, 14.

[7]The Defendants did not address these claims in their Motion [44].

11

instructions.  The parties are hereby notified that failure to file written objections to the proposed

findings, conclusions, and recommendations contained within this report and recommendation

within ten days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the proposed factual findings and legal conclusions accepted by

the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1428-29 (5th Cir. 1996).

       SO ORDERED this the 23rd day of July, 2008.

                            s/ Michael T. Parker

                            United States Magistrate Judge